UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. HARAHAN, IV,

      Plaintiff,

v.

FAIRMARKET LIFE SETTLEMENTS
CORP.,

      Defendant.

_____/

Case No. 05-73548

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [43]**

Pending before the Court is Defendant FairMarket Life Settlement Corporation's ("FairMarket's") motion to dismiss, filed on August 21, 2006. In the alternative, Defendant also moves for summary judgment. Plaintiff William Harahan sued Defendant under a number of state law theories arising out of a contract for Defendant to purchase an existing life insurance policy from Plaintiff.[1] In particular, Plaintiff alleges: (1) he is entitled to specific performance in the form of the policy's return from Defendant (Count I), (2) Defendant committed fraud (Count II), (3) Defendant breached its obligations under express and implied contracts between the parties (Counts III and

---

[1]Plaintiff's original complaint named both Defendant FairMarket and Co-Defendant Rumson Capital, L.P. ("Rumson"). Rumson subsequently filed a third party complaint against Jaffe, Raitt, Heuer & Weiss, P.C. ("Jaffe"), Plaintiff's attorneys, but the Court has since entered a Stipulated Order dismissing the complaints against Rumson and Jaffe. On July 20, 2006, Plaintiff filed its First Amended Complaint, naming FairMarket as the only defendant. All citations to the Complaint contained in this Order refer to Plaintiff's First Amended Complaint.

1

IV), (4) Defendant was negligent (Count V), and (5) Defendant's actions violated the Michigan Consumer Protection Act, M.C.L. § 445.901, et seq. ("MCPA") (Count VI).

In support of its motion, Defendant argues that (1) specific performance is inappropriate here because an adequate remedy at law exists, (2) Plaintiff has not shown that Defendant breached a duty, which is required to have fraud and negligence, (3) Defendant did not breach any express contractual provisions, and an implied contract does not exist when there is a fully integrated express contract covering the same subject matter, and (4) the MCPA does not apply to this transaction.

In response, Plaintiff acknowledges his willingness to dismiss the claim for specific performance without prejudice and asserts that (1) Defendant owed Plaintiff a duty, (2) courts can imply contractual provisions even in light of an express contract to avoid an unjust result, (3) this transaction is a qualifying service under the MCPA, and (4) Rumson was Defendant's agent, so anything Plaintiff said to Rumson is imputed to Defendant.

For the reasons set forth below, the Court GRANTS Defendant FairMarket Life Settlements Corporation's motion to dismiss and this case is DISMISSED.

## I.  FACTS

Plaintiff Harahan owned a $5 million life insurance policy from Lincoln National Life Insurance Company that insured the life of another individual.  (Compl. ¶ 7.)  On June 27, 2005, Plaintiff signed a Life Settlement Contract (the "Contract") with Defendant FairMarket to sell the policy for $250,000.  (Compl. ¶ 8.)  Although the Contract only refers to Plaintiff and Defendant, the sale was negotiated through Rumson Capital, L.P. ("Rumson"), a company that serves as a broker for such transactions.  (Compl. ¶ 9;

2

Def.'s Mot to Dismiss at 1.)  Neither party disputes that all preliminary negotiations occurred between Plaintiff and Rumson, and Defendant did not become involved until it came time to sign the Contract. (Compl. ¶ 9; Def.'s Mot. at 2.)

During negotiations, Plaintiff insisted that the Contract incorporate a rescission clause, as he was still attempting to obtain a higher price for the policy than Defendant was willing to pay.  This request passed from Plaintiff to Rumson to Defendant, and Defendant consented to a provision that appears as Section III of the Contract.  (Compl. ¶¶ 10-11, Ex. A at 2.)  Defendant paid the full amount of the purchase price on July 20, 2005, thereby completing the sale with Plaintiff.  (Compl. ¶ 12.)

On July 12, 2005, Defendant entered into an agreement (the "Purchase Agreement") to sell the policy to another entity, PAA-TSLI 1 Ltd. ("PAA"), for $425,000. PAA is one of Defendant's financing sources.  (Def.'s Mot. at 4.)  This agreement was also consummated on July 20, 2005, the same day of the sale from Plaintiff to Defendant. (Compl. ¶¶ 13-15.)  The Purchase Agreement included a rescission clause with an identical time period to that in the Contract between Plaintiff and Defendant. (Def.'s Mot. at 4.)  Unbeknownst to either Plaintiff or Defendant, PAA made a $64,000 premium payment under the policy on July 21, 2005.  (Compl. ¶ 16; Def.'s Mot. at 4.)

Plaintiff's right of rescission under the Contract with Defendant gave him until August 4, 2005 to exercise this right.  Negotiations with other potential purchasers, including Defendant's interest in submitting a bid to compete with any other offers, were still ongoing as the deadline approached, so Plaintiff and Defendant agreed to extend the rescission period by a week to August 11, 2005.  (Compl. ¶¶ 19-20; Def.'s Mot. at 4-5.)  Plaintiff made this request to Defendant through Rumson, as Plaintiff and Rumson

3

were engaged in discussions to reach a deal with Defendant that would keep Plaintiff

from rescinding.  (Def.'s Mot. at 5.)  Although Defendant never secured a formal

extension of the rescission period in the PAA Purchase Agreement, Defendant believes

that PAA would have granted that request due to the parties' existing business

relationship.  (Def.'s Mot. at 5.)

Prior to the August 11 deadline, Plaintiff found a buyer willing to pay him

substantially more for the policy than Defendant,[2] and contacted Rumson on August 10,

2005 to obtain Defendant's wire instructions as well as make an oral request for any

additional information necessary to rescind under the Contract.  (Compl. ¶ 22.)

Pursuant to the Contract, Plaintiff notified Defendant of his intent to rescind and wired

the $250,000 purchase price to Defendant's escrow agent on August 11, 2005.  (Compl.

¶ 23.)  The following day, Defendant notified Plaintiff that the rescission was ineffective

because the wire did not include the amount of PAA's premium payment, as the

Contract's rescission provisions required.  (Compl. ¶ 24.)  Plaintiff attempted to make an

additional wire transfer to cover the premium amount, but Defendant refused to rescind

the sale. (Compl. ¶ 25.)  Defendant claims that it never knew of PAA's principal

payment until after Plaintiff's attempted rescission.  (Def.'s Mot., Ex. 1 at ¶ 12.)

## II.  STANDARD OF REVIEW - MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume

that Plaintiff's factual allegations are true and determine whether the Complaint states a

---

[2]Plaintiff alleges that this was $550,000-600,000 more than Defendant's
purchase price, but provides no documentation to support these figures.  (Compl. ¶ 34.)

4

valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## III.  ANALYSIS

### A.  Choice of Law and Venue Clause

Section VI of the Contract includes a choice of law clause, stating that New York law will apply to any disputes relating to the Contract.  This provision also includes a venue selection clause, but by not asserting improper venue in its instant motion, Defendant has waived its right to contest venue in this Court.  Fed. R. Civ. P. 12(h)(1)(A).  As to the choice of law clause, both parties briefed the issue under Michigan law and consent to the application of Michigan law for purposes of this case.

### B.  Plaintiff is not entitled to specific performance on these facts

Plaintiff is willing to dismiss this claim without prejudice, as the policy is now in

5

PAA's hands and this Court does not have personal jurisdiction over PAA, a British entity. Plaintiff still wishes to retain the ability to raise this claim in the future, however, should this Court obtain personal jurisdiction over PAA, or if the policy ever returns to Defendant. As a result, it is necessary for the Court to address the validity of any claim for specific performance that Plaintiff may be able to assert.

The Michigan Supreme Court applies the equitable doctrine of specific performance in the following manner:

> Though the law of specific performance primarily relates to realty contracts, and, as a general rule, is not applicable where the subject-matter is personal property, [] specific performance will be decreed and a contract enforced where the thing, in the nature of personal property, has a sentimental value, is rare, and cannot be obtained elsewhere, or has no market value, or the true value is difficult of ascertainment, or requires an accounting, *or other peculiar circumstances of the contract involve conditions where the measure of damage in a court of law will not give full and adequate compensation.*

*Cole v. Cole Realty Co.*, 135 N.W. 329, 331 (Mich. 1912) (emphasis added).

Here, Plaintiff is seeking the return of personal property, but has not shown why the monetary damages that he requests in the Complaint for the difference between the price Defendant paid for the policy and the possible second sale would be inadequate. Therefore, Plaintiff does not have a valid claim for specific performance as a matter of law, and this claim is dismissed with prejudice.

### C.  Plaintiff's breach of contract claims fail as a matter of law

Plaintiff argues that Defendant breached the Contract by (1) failing to rescind the sale once Plaintiff met the rescission requirements, and, alternatively, (2) preventing Plaintiff from meeting those requirements. Plaintiff's implied breach of contract argument rests on the assertion that Defendant was obligated to inform Plaintiff of any

6

information relating to a potential rescission of the sale.

### 1. Plaintiff did not meet the rescission requirements and Defendant did not breach any provisions of the express contract

Plaintiff admits that the Contract obligated him to return the sales price in addition to "any . . . premiums paid by FMLS" in order to properly rescind the sale, and that "'FMLS' means [Defendant] together with its successors and Assigns."  Contract, Secs. I.A and III.  He argues, however, that PAA did not constitute an assign of Defendant, as Plaintiff assigned policy ownership and beneficiary rights directly to PAA, (Pl.'s Resp., Ex. 2.) and not Defendant, thereby relieving Plaintiff of the obligation to return the amount of PAA's premium payment.  This formalistic argument does not fit the realities of the transaction, and disregards the fact that Defendant and PAA entered into a separate Purchase Agreement outside of the Contract between Plaintiff and Defendant. The issue of whether policy ownership and beneficiary rights were actually assigned to Defendant before Defendant's eventual assignment to PAA is irrelevant.  All that matters is that Defendant assigned its interest in the policy to PAA via the Purchase Agreement, so PAA was one of Defendant's assigns as described in the Contract. Therefore, Plaintiff did not meet the rescission requirements under the Contract because its payment to Defendant did not include PAA's premium payment.

Plaintiff also asserts that he substantially performed the Contract by tendering the amount of the sale price on August 11, and requests that this Court enforce the Contract against Defendant under this equitable doctrine.  With regards to substantial performance, the Michigan Supreme Court has stated:

> A promisor, it is true, is obligated to perform as he promised.  This does
> not mean, however, that every deviation from the performance promised

> so goes to the essence of the contract as to privilege the other to refuse to
> render a reciprocally promised performance. . . .There is [no] fixed
> formula.  The question is one of degree, its determination involving the
> resolution of many factors. . . ."It is always a question of fact, a matter of
> degree, a question that must be determined relatively to all the other
> complex factors that exist in every instance.  The variation in these factors
> is such that generalization is difficult and the use of cases as precedents
> is dangerous.  This is not to say that rules are impossible or that
> precedents are useless."

*Antonoff v. Basso*, 78 N.W.2d. 604, 610 (Mich. 1956) (quoting 3 Corbin on Contracts, §
704).

A review of past cases in Michigan reveals that most involving substantial performance
arose in building construction disputes, similar to that in the famous New York Court of
Appeals case, *Jacob & Youngs, Inc. v. Kent*, 129 N.E. 889 (N.Y. 1921).  There, a
building contract specifically required the installation of Reading brand pipe.  The
plaintiff-builder installed pipe of similar quality that was equal to Reading pipe in all
material respects, but produced by a different manufacturer.  Construction was
complete by the time the defendant first complained about the discrepancy and refused
to pay the final installment to the plaintiff.  The court held that the plaintiff was liable for
nominal damages but did not have to reinstall Reading pipe because he substantially
performed the terms of the contract.  As for Michigan law, Plaintiff specifically cites *King
Blair Co. v. Schloss*, 234 N.W. 481 (Mich. 1931), a case where the Michigan Supreme
Court enforced a real estate option contract, despite the fact that the plaintiff had not
signed the document, because the parties' performance under the contract was
substantially completed at the time the dispute arose.

Although generalization is difficult in this fact-specific area of the law, the Court
believes that the instant dispute is not one that warrants application of this equitable
doctrine.  Plaintiff did not fulfill his obligations under the Contract, and the premium

8

payment was not an insignificant amount in light of the overall sales price that Plaintiff did return to Defendant.  This is not a case where Plaintiff had to compile a large number of past payments in determining how much he owed to Defendant under the rescission clause and Defendant is attempting to capitalize on the Plaintiff's omission of one or two insignificant items when making the calculation.  The size of the omitted premium payment relative to the total amount due under the rescission clause takes this case outside of the realm of those where courts have previously found substantial performance of a contract.

In the alternative, Plaintiff argues that its failure to adhere to the rescission requirements was a result of Defendant's interference by not disclosing PAA's prior premium payment.  This argument fails on several grounds.  First, the Contract expressly gives Defendant the right to assign the policy to third parties, and Plaintiff points to no part of the Contract that obligates Defendant to inform it of any such assignment, much less whether an assignee has made any premium payments.  Second, Plaintiff brings no evidence that Defendant even knew of PAA's payment prior to August 12, 2005.  Third, Plaintiff never requested a formal payoff amount from Defendant prior to rescinding the sale on August 11.  Lastly, Defendant had no obligation to request that PAA return the policy on August 12, despite Defendant's earlier indication that PAA would do so as a matter of courtesy.  Under these facts, the Court does not find that Defendant interfered with Plaintiff's attempted rescission in a sufficient manner to hold Defendant liable for Plaintiff's failure to meet the Contract's

rescission requirements.[3]

## 2. An implied contract cannot exist if the parties have an express contract covering the same subject matter

It is well-settled under Michigan law that an implied contract does not exist when there is an express contract covering the same subject matter. *In re DeHaan's Estate*, 134 N.W. 983 (Mich. 1912); *H.J. Tucker & Assoc., Inc. v. Allied Chucker and Eng'g Co.*, 595 N.W.2d 176, 188 (Mich. Ct. App. 1999); *Cascade Elec. Co. v. Rice*, 245 N.W.2d 774, 776 (Mich. Ct. App. 1976); and *Campbell v. City of Troy*, 202 N.W.2d 547, 549 (Mich. Ct. App. 1972). Defendant's only argument to the contrary rests upon an unpublished Michigan Court of Appeals decision that was subsequently vacated by the Michigan Supreme Court. *See Quality Prods. and Concepts Co. v. Nagel Precision*, No. 207538, 2001 WL 674253 (Mich. Ct. App. March 21, 2000); *rev'd* 622 N.W.2d 788 (Mich. 2000). Therefore, Defendant's argument has no merit.

## D. Plaintiff's negligence claim fails as a matter of law for lack of a duty from Defendant to Plaintiff

A prima facie claim for negligence under Michigan law "must establish the existence of a duty owed by the defendant to the plaintiff." *Dykema v. Gus Macker Enter., Inc.*, 492 N.W.2d 472, 474 (Mich. Ct. App. 1992). In contractual situations, there must be a separate duty owing from the defendant to the plaintiff to plead a prima facie claim of negligence. "[T]he mere failure to perform an obligation under a contract

---

[3]Plaintiff also attempts to focus on the fact that the rescission provisions in the Purchase Agreement between Defendant and PAA did not match those in the Contract between Plaintiff and Defendant. This argument does not warrant consideration by the Court, as this case concerns interactions between Plaintiff and Defendant, not Defendant and PAA. Here, Defendant's possible lack of ability to rescind the sale to PAA in the event of Plaintiff's valid rescission under the Contract is irrelevant.

10

cannot support a negligence claim." *Siecinski v. First State Bank of East Detroit*, 531 N.W.2d 768, 771 (Mich. Ct. App. 1995).  In order to create a legal duty, the plaintiff must either (i) point to a special relationship between the parties, or (ii) demonstrate that the defendant undertook a particular activity that leads to the imposition of a legal duty. *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 178 (Mich. 1993).  Plaintiff does not argue that this situation is one of those where courts will typically find a special relationship between the parties, such as interactions between landlords and tenants, proprietors and patrons, employers and employees, and residential invitors and invitees. Therefore, Plaintiff must show that Defendant meets the particular activity prong in *Schultz*.

Although Plaintiff posits that Defendant's actions constitute a particular activity that should lead to a duty from Defendant to Plaintiff, he provides nothing more than the bare assertion that this is the case along with a citation to *Schultz*.  That case involved a wrongful death claim against an electric utility company for failure to inspect its electrical lines, which allegedly led to the plaintiff's death.  The court held that the utility had a duty to inspect its lines because of the inherently dangerous nature of electricity and the utility's expertise in addressing the dangers thereof.  The Court sees nothing in the instant case that is analogous to the facts in *Schultz*, and declines Plaintiff's unsupported invitation to find that Defendant is engaged in a particular activity that would lead to a duty from it to Plaintiff.[4]

_____

[4]Plaintiff also suggests that the Court should burden Defendant with the duty to disclose PAA's premium payment because it would have been easy and inexpensive for Defendant to find out about the payment, and Defendant was in a better position to discover information about the payment because it was aware of Plaintiff's desire to

11

### E.  Plaintiff's fraud claim fails as a matter of law

Plaintiff asserts two grounds for fraud on the facts of this case: (i) actual fraud, and (ii) silent fraud.

Among other elements, actual fraud requires that Defendant made a misrepresentation of material fact to Plaintiff.  Plaintiff does not allege that Defendant communicated anything to him regarding the PAA premium payment, so nothing in Plaintiff's complaint indicates that Defendant made any representation to Plaintiff, much less a *mis*representation.  Therefore, Plaintiff does not have a valid claim for actual fraud.

Silent fraud, on the other hand, concerns "the suppression of a material fact, which a party in good faith is duty-bound to disclose . . . ."  *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998).  In order to suppress a fact, however, Plaintiff must be able to show that Defendant at least knew of the fact at the time the alleged suppression took place, as "there is no duty to disclose what is not known . . . ."  *Hammond v. Matthes*, 311 N.W.2d 357, 359 (Mich. Ct. App. 1981).  Here, Plaintiff has not alleged that Defendant knew of PAA's premium payment until August 12, 2005.  Furthermore, Plaintiff has not argued the existence of any legal or contractual duty that would have required Defendant to disclose PAA's premium payment.  As a result, Defendant could not have withheld any information about the payment during the rescission period when Plaintiff claims it had a duty to disclose that information, so

---

rescind the Contract.  These assertions are unsupported by any legal authority, and disregard the fact that it would have been equally easy for Plaintiff to request a formal payoff amount prior to the last date of the rescission period.  Therefore, the arguments do not deserve further discussion.

Plaintiff's silent fraud claim also fails as a matter of law.

### F.  Plaintiff's MCPA claim fails as a matter of law because this transaction is not covered by the Act

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of a trade or commerce . . . ."  M.C.L. § 445.903(1).  A "trade or commerce" is further defined as:

> the conduct of a business providing goods, property, or service *primarily for personal, family, or household purposes* and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or an other article, or a business opportunity.  "Trade or commerce" does not include the purchase or sale of a franchise, but does include pyramid and chain promotions, as "franchise", "pyramid", and "chain promotions" [are defined in other sections of the Michigan Compiled Laws].

M.C.L. § 445.902(d) (emphasis added).

When determining if a defendant's conduct is covered by the MCPA, courts consider the particular transaction at issue and whether it was primarily designed for personal, family or household purposes.  Whether the defendant participates in many other transactions that are for such purposes is irrelevant – all that matters is the allegedly illegal transaction between the plaintiff and defendant.  See *Robertson v. State Farm Fire & Cas. Co.*, 890 F.Supp. 671, 680-81 (E.D. Mich. 1995) (holding that the MCPA did not apply because conversations between the plaintiff and defendant insurer indicated that the transaction focused on insurance for the plaintiff's dairy farm, and not his household, despite the fact that the plaintiff's policies with the defendant provided coverage for both commercial and residential property); and *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 394 (Mich. Ct. App. 1999) (holding that the MCPA did not apply to a plaintiff who purchased a truck primarily for business, rather than personal, uses).

13

At first blush, this type of insurance sales transaction might not appear to be one that many households would undertake on a regular basis.  For many reasons, however, individuals may want or need to receive cash for an existing insurance policy due to their advancing age, significant unexpected expenses or inability to continue paying insurance premiums.  Therefore, some of Defendant's policy purchases are likely to involve situations that would fall under the MCPA because the policy seller would be doing so for personal, family or household purposes.  Although no case is directly on point, *Robertson* and *Zine* counsel that Plaintiff must show that this particular sale transaction was for these purposes in order for the MCPA to apply.  He cannot rest on an assumption that some of Defendant's transactions must involve consumers.

Beyond conclusory statements that Defendant provided services that fall under the MCPA and that Defendant "routinely enters into contracts with consumers in connection with its purchase of policies such as the one at issue here," (Pl.'s Resp. at 19.) Plaintiff does not assert any facts to show that he entered into the transaction for personal, family or household purposes.  In fact, the circumstances surrounding this case indicate exactly the opposite conclusion.  The policy at issue was for a large dollar amount, and the insured was an individual without any familial relation to Plaintiff that appears in the pleadings.  Furthermore, this was not the only insurance policy Plaintiff was attempting to sell at this time.  (Compl. ¶ 10.)  Consideration of these facts, along with Plaintiff's failure to indicate how this transaction was for personal, family or household purposes, leads this Court to conclude that Defendant was not engaged in trade or commerce that is covered by the MCPA.  Therefore, Plaintiff's claim under the MCPA must be dismissed as a matter of law and there is no need to consider whether

14

Defendant's alleged actions constituted unfair trade practices under the MCPA.

### G.  Rumson was not Defendant's agent for purposes of the transaction with Plaintiff

Lastly, Plaintiff argues that an apparent agency relationship was created between Defendant and Rumson that would be sufficient to transform Plaintiff's statements to Rumson into statements from Plaintiff to Defendant.  An apparent agency relationship requires that (1) the third party had a reasonable belief that the agent was authorized to act on behalf of the principal, (2) the principal took some act, or neglected to take an act, that led to the third party's belief, and (3) the third party must not have been negligent.  *Little v. Howard Johnson Corp.*, 455 N.W.2d 390, 394 (Mich. Ct. App. 1990).

As to the first prong, Plaintiff's allegations do no more than assert a conclusion that Plaintiff reasonably believed that Rumson was acting as Defendant's agent. Plaintiff's response brief to the instant motion included the statement "Plaintiff reasonably believed that Rumson had the authority to act on behalf of FairMarket because [Plaintiff] reasonably did so . . . ." (Pl.'s Resp. at 11.), but did not include any facts whatsoever to support the assertion.  In addition, Plaintiff has not shown that Defendant placed Rumson in the position of its agent for this transaction, which is required by the second prong.  What is more, the uncontroverted evidence indicates that Plaintiff was using Rumson to market the policy at issue here to other purchasers besides Defendant.  This provides further inference that Rumson was not acting as Defendant's agent in this transaction, since Rumson would then likely be breaching its duties to Defendant by attempting to sell Plaintiff's policy to several of Defendant's competitors.

15

Plaintiff's citations to the Restatement (Third) of Agency are similarly unavailing. While these general statements of law may apply in some jurisdictions, Plaintiff provides no authority that they conform to Michigan law, or that the Michigan Supreme Court has adopted the Restatement in one of its past cases.  Without such support, this Court declines to apply the Restatement here, especially when Plaintiff has not sufficiently alleged an agency relationship between Defendant and Rumson.

For all of the above reasons, Plaintiff's claim that Defendant created an apparent agency relationship between itself and Rumson is without merit.

## IV.  CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows: Defendant's motion to dismiss is GRANTED and this case is DISMISSED.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

16